UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | } | |
| | } | |
| LUANNE HASTINGS, | } | Case No. 09-41584-JJR-13 |
| | } | |
| Debtor. | } | |

| | | |
|---|---|---|
| LUANNE HASTINGS, | } | |
| | } | |
| Plaintiff, | } | |
| v. | } | Adv. P. No. 09-40067-JJR |
| | } | |
| FIRST SOUTHERN STATE BANK, | } | |
| | } | |
| Defendant. | } | |

| | | |
|---|---|---|
| LINDA GORE, as Trustee of the Estate of Luanne Hastings, | } | |
| | } | |
| Plaintiff, | } | |
| v. | } | Adv. P. No. 09-40073-JJR |
| | } | |
| FIRST SOUTHERN STATE BANK, | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

After being consolidated (AP Doc. 16), these two adversary proceedings came before the Court for trial on June 7, 2010. Below are the Court's findings of fact and conclusions of law made pursuant to Rule 7052(a) of the Federal Rules of Bankruptcy Procedure.[1]

---

[1] All references to a "Bankruptcy Rule" are to a rule of the Federal Rules of Bankruptcy Procedure.

JURISDICTION:

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. These are core proceedings pursuant to 28 U.S.C. § 157(b)(2); therefore, the Court has authority to enter final orders.[2]

BACKGROUND:

*Summary of Claims*

In their amended complaints, Luanne Hastings ("Hastings" or the "Debtor") and Linda Gore, the Standing Chapter 13 Trustee for this Division (the "Trustee" and together with Hastings, the "Plaintiffs"), both alleged First Southern State Bank (the "Bank") failed to provide Hastings with the correct number of copies of the Notice of Right of Recession ("NRR") at the closing of a residential mortgage loan transaction, and thereby violated § 1635 of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq* ("TILA"), and § 226.15 of Regulation Z, 12 C.F.R. Part 226 ("Reg. Z"), promulgated by the Federal Reserve Board to implement TILA. As a consequence of the alleged TILA violation the Plaintiffs sought damages and attorneys' fees, and claimed they had exercised their right to rescind the mortgage transaction via notice to the Bank from the Plaintiffs' attorney. Additionally, the amended complaints contained counts objecting to the Bank's secured claim filed in the Debtor's chapter 13 bankruptcy case, and attacked the Bank's mortgage as having been procured by misrepresentation, fraudulent suppression and fraud in the execution, and finally alleging that the recordation of the mortgage was invalid. The Trustee concluded her amended

---

[2] The parties stipulated that these were core proceedings and that this Court had jurisdiction under 28 U.S.C. § 1334. (AP Doc. 38).

2

complaint with a count alleging that she was entitled to avoid the mortgage pursuant to her strong-arm powers under Section 544(a) of the Bankruptcy Code.[3] The parties filed a Joint Stipulation of Facts and Exhibits (AP Doc. 38), which expedited the trial. The following findings of fact are based on the parties' stipulation, the testimony and exhibits presented at trial, and the post-trial supplements to the record, which included deposition testimony.

*Facts*

Hastings owed two parcels of real property in Fort Payne, Alabama: her home on Alabama Avenue and a rental house on 7th Street. She mortgaged the 7th Street property to the Bank in 2005 to secure a loan (the "2005 loan"). In 2006 she obtained a "consolidation loan" from the Bank and it too was secured by a mortgage (the "2006 Mortgage"). The parties agreed—and there is no dispute about this—that only the Alabama Avenue property, the Debtor's home, was to be mortgaged to secure the consolidation loan. However, the 2006 Mortgage, after being recorded a second time, purported to encumber both properties, and the facts surrounding how and why both properties ended-up in the 2006 Mortgage are the basis for the Plaintiffs' non-TILA claims. Nonetheless, in an effort to simply this discussion, the facts pertinent the TILA claims will be addressed first.

Hastings testified that when the 2006 consolidation loan was closed on July 28, 2006, the Bank furnished her with copies of the loan and mortgage documents, including the TILA disclosures and NRR. Although she signed the NRR retained by the Bank, and therein acknowledged her receipt

---

[3] 11 U.S.C. § 101 *et seq*, and herein the "Code" or "Bankruptcy Code."

3

Case 09-40067-JJR  Doc 44  Filed 09/30/10  Entered 09/30/10 14:46:51  Desc Main
Document  Page 3 of 19

of two copies of the NRR, she testified that she received only one copy.[4] Her testimony regarding how many copies of the NRR she received was based not so much on her memory of what actually occurred at the closing, but on her belief that because her copies of the loan documents, including one copy of the NRR, were secured by a staple which was never removed, she must have received only the one copy. In other words, if she had been given two copies of the NRR, she would have had to remove the staple to retrieve the extra copy needed to confirm she was not canceling the transaction.

The Bank produced a copy of the NRR which contained two signatures of the Debtor—the authenticity of the signatures is not at issue. The first signature was dated July 28, 2006, the day of closing; and the second was dated August 2, 2006, the day the Debtor was given the loan proceeds. On direct examination, the Debtor testified that she did not return to the Bank on August 2, 2006 and sign the NRR confirmation that she had not rescinded the transaction. The Debtor surmised that she must have signed at closing both the receipt and confirmation portions of the NRR retained by the Bank; however she did admit that she did not get the loan proceeds at closing and had to wait until August 2, 2006 for the money. During cross-examination, the Debtor became equivocal about whether or not she returned to the Bank on August 2, 2006.

Also testifying were Don Taylor, the Bank's loan officer who made the 2006 consolidation loan to Hastings, and Christopher Ritchey, a vice president and branch manager of the Bank who testified regarding the Bank's computer program for printing loan forms, including the number of

---

[4]TILA requires that a borrower be given two copies of the NRR for obvious reasons: One copy to retain and the other to return to the lender either to cancel the transaction or to certify that the transaction had not been rescinded. After a "cooling-off" period of three business days, if the borrower certifies she has not rescinded the transaction, then she is entitled receive the loan proceeds. 12 C.F.R § 226.23(c).

forms printed. Taylor is no longer employed by the Bank and did not remember many of the details about the consolidation loan or the closing, but did confirm that when loan documents were prepared for a loan of this type the Bank's computer program would print 4 or 5 copies of the NRR, more than enough to provide Hastings with two copies. Although Ritchey was not involved in closing the loan, he stated he was familiar with the Bank's computer program for printing loan forms that was used at the time the consolidation loan was made to Hastings. He stated that for a loan of this type, i.e. a residential mortgage loan, the computer would, by default, print five copies of the NRR, and that according to the Bank's usual procedures and policies the borrower would be given two copies of the NRR—one for her records, and the other to sign and return to confirm her election to either cancel or not cancel the transaction. The latter was necessary for the borrower to receive the loan proceeds.

What became obvious to the Court was that after closing no one gave any thought to the NRR and how many copies were given to the Debtor until almost three years later when she filed her bankruptcy petition and the loan and mortgage documents were being inspected because of the errors and corrections that appear on the face of the twice-recorded 2006 Mortgage; that mortgage and its dubious history will now be discussed.

The Bank's attorney, David C. Ware, issued title insurance and prepared the 2006 Mortgage (including its Exhibit "A") for the consolidation loan, as he had previously done with respect to the 2005 loan that was secured by a mortgage on the 7th Street property. Mr. Ware also recorded the 2006 Mortgage—twice.[5] The Court observed Mr. Ware's demeanor and carefully scrutinized his

---

[5]Contrary to the allegations in the amended complaints, the 2006 Mortgage was recorded twice—the second recording was not of a photo-copy. The official probate office stamps indicating the time and date of the two recordings appear on the first page of the 2006 Mortgage,

5

testimony. Mr. Ware provided a very plausible and credible description of the events surrounding the preparation of the 2006 Mortgage, and the reason it was "corrected" and re-recorded.

According to attorney Ware, the 2005 loan was secured by a mortgage he prepared covering the 7th Street property. Ware maintained a file on Hastings and the 2005 loan transaction. When Ware was contacted by the Bank to prepare the 2006 Mortgage for the consolidation loan, he was furnished with a copy of the legal description of the Alabama Avenue property. He assumed, albeit mistakenly, that because the 2005 loan was secured by a mortgage on the 7th Street property, and was being refinanced through the consolidation loan, the Bank intended for the 2006 Mortgage to cover both properties. The transmittal letter from the Bank to Ware regarding the consolidation loan said nothing about releasing the 7th Street property, and it is easy to understand why he made the assumption that the 2006 Mortgage should include both properties. That letter stated:

> Please do title insurance on the following [attached] property description [of the Alabama Avenue property]. The customer name is Luanne Hastings . . . .; The loan amount is $32,000. *A portion of the proceeds will be used to payoff our existing [2005] mortgage here.* Let me know when you are ready for the payoff amount. Please call me with any questions.

(Plaintiff's Exhibit 21; emphasis added.)

Ware prepared the 2006 Mortgage, but he did not attend the closing.[6] Following the closing,

---

confirming that the same document was recorded twice. See also, paragraph 15 of the Joint Stipulation. AP Doc. 38.

[6] An instrument that conveys an interest in Alabama real property may not be recorded unless it contains a statement showing the name and address of the party who prepared the instrument. Ala. Code § 35-4-110 (1975). The following statement appeared on the first page of the 2006 Mortgage:

> THIS INSTRUMENT PREPARED BY:
> WEAR & WEAR, P.A.
> DAVID C. WEAR

6

the 2006 Mortgage was recorded with the county probate office. After it was returned from the probate office two errors were discovered: First, although the 2006 Mortgage made reference to Exhibit "A" for a description of the mortgaged property, when it was recorded no exhibit was attached. Second, the blank spaces in the pre-printed mortgage form that were to be completed with the respective dates of the Debtor's signature and the notary public's acknowledgment were both completed as the "28th day of *August*, 2006"—the 2006 Mortgage was actually signed and acknowledged by Hastings on the 28th day of *July*, 2006.[7]

Based on the events described by Ware, it is reasonable to conclude that the Exhibit "A" attached to the 2006 Mortgage when it was recorded the second time was a duplicate of the same exhibit that had been prepared by Ware before the closing. Beyond that there can only be speculation regarding what actually occurred: Either Exhibit "A" was included as part of the 2006 Mortgage when it was signed by the Debtor at closing on July 28, 2006 but was thereafter unintentionally omitted before the initial recordation; or it was not part of the 2006 Mortgage when it was signed. Neither Ware nor the Bank's representatives speculated on what actually occurred, and the Debtor's deposition testimony regarding whether Exhibit "A" was attached to 2006 Mortgage when she signed it was not convincing.

What is known is that when the 2006 Mortgage was first recorded Exhibit "A" was not

---

P.O. DRAWER 680348 (35968-0348)
407 ALABAMA AVE S
FORT PAYNE, AL 35967

[7]It was unclear whether Wear or the Bank made the initial discovery of the errors. When the 2006 Mortgage was recorded the first time (and also the second time), there appeared on its front page the hand-written notation, "Ret. Wear." Thus it is reasonable to assume the county probate office returned the 2006 Mortgage to Wear after it was recorded on both occasions.

7

attached. After being recorded and returned, Ware recorded it a second time, but before doing so he did three things: He attached Exhibit "A" which contained legal descriptions of the Alabama Avenue and 7th Street properties; he changed the signature and notary acknowledgment dates from July to August; and he typed the following statement at the top of the first page of the mortgage:

> THIS MORTGAGE IS RE-RECORDED TO CORRECTLY IDENTIFY THE DATE OF EXECUTION AND NOTARY ACKNOWLEDGMENT AND TO ADD THE DESCRIPTION OF THE PROPERTY INTENDED TO BE CONVEYED.

ANALYSIS OF FACTS AND CONCLUSIONS OF LAW:

*TILA Claims*

It is uncontroverted that the Debtor signed the Bank's copy of the NRR and thereby acknowledged her receipt of two copies of the NRR. She testified, however, that notwithstanding her written acknowledgment, she may not have received two copies. This testimony was less than convincing. While the Court does not believe the Debtor's testimony was contrived, its credibility was not sufficient to carry her burden of proof. Based on all the evidence, including the witnesses' testimony and documentary evidence, the Court finds that what is most plausible is that Hastings did receive two copies of the NRR at closing. One copy was included with her copies of the loan documents that had been secured with a staple, and never removed. Logically, the second copy would not have been stapled with the other documents because, post-closing, Hastings would need ready access to the second copy to either confirm she was not rescinding the transaction, thereby entitling her to the loan proceeds, or to give notice to the Bank of her election to cancel the transaction. In all likelihood Hastings did, in fact, return to the Bank on August 2, 2006, but understandably forgot to bring her second copy of the NRR. The Bank had its copy of the NRR in

8

its file—the copy from closing that contained the Debtor's signature acknowledging receipt of her two copies. The Debtor again signed the Bank's copy, this time to confirm her election not to rescind, and the Bank gave the Debtor the cashier's check dated August 2, 2006 for the loan proceeds.

Reg. Z § 226.23(b) requires that a creditor deliver two copies of the NRR to a consumer borrower. 12 C.F.R. § 226.23(b). Under TILA § 1635(c) a written acknowledgment of receipt of TILA disclosures and documents creates a rebuttable presumption of their delivery. That section provides that:

> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

15 U.S.C. § 1635(c).

Hastings acknowledged in writing that she received two copies of the NRR at closing, which gave rise to a rebuttable presumption that the Bank complied with TILA's required delivery of two copies of the NRR. Not only did she fail to rebut this presumption, the weight of the credible evidence supports a finding that she was provided *two* copies of the NRR at closing, thereby satisfying the requirements of TILA and Reg. Z. Hence, neither the Debtor nor the Trustee had the right to rescind the transaction under TILA, and there were no TILA or Reg. Z violations with respect to the delivery of the required number of copies of the NRR.[8]

---

[8]In their post-trial submission of Authorities Relied Upon by the Plaintiffs, they allege for the first time the Bank violated TILA by its "failure to list all property that is subject to the security interest taken," and cited 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.18. No such allegations appeared in either of the Plaintiffs' amended complaints, and neither was such a claim argued at trial. Nonetheless, Reg. Z § 226.18(m) requires the creditor to disclose "[t]he fact that

*Misrepresentation and Fraudulent Suppression*

There was no credible evidence to support a finding that the Bank, acting through its agents, counsel or otherwise, was guilty of misrepresentation, fraud or suppression. If the Bank had been attempting to commit fraud or suppress facts, its counsel would not have re-recorded the 2006 Mortgage for all the world to see after having typed at the top of the first page exactly what had been corrected.[9] The steps taken by the Bank's counsel were nothing more than an honest attempt to correct oversights that inevitably occur (infrequently one would hope) in the day-to-day business of banking and lawyering. The Debtor's attempt to contort the facts for the purpose of creating a suspicion of intentional fraud, where there was none, was unsuccessful.

*Alterations–Validity of 2006 Mortgage*

The form and content of the notary acknowledgment used in the 2006 Mortgage satisfied the Alabama statutory requirements for acknowledgments of conveyances (including mortgages) of real property. Ala. Code § 35-4-29 (1975). Changing the dates of execution and acknowledgment merely corrected the dates to accurately reflect when those events occurred and the actual intent of the

---

the creditor has or will acquire a security interest in the property purchased as part of the transaction [not applicable to this transaction], or in other property identified by item or type." TILA § 1638(a)(9) essentially says the same thing. In the TILA disclosures given by the Bank to Hastings (Plaintiffs' Exhibit 1), the description of the "Security" was "REAL ESTATE" which was the "type" of security being taken by the Bank, and satisfied the TILA and Reg. Z requirements for disclosure of the security.

[9]If the Bank had intended to fraudulently retain a lien on the 7th Street property, it would not have recorded the 2006 Mortgage the first time without Exhibit "A." The scheme would have been simple: At closing the exhibit to the mortgage would have described only the Alabama Avenue property, but before recording that exhibit would have been replaced with one containing both descriptions. That is not what happened. The second recording of the 2006 Mortgage with the front-page declaration of what had been changed belies any fraudulent intent. The facts in this case simply do not support a finding of any nefarious conduct by the Bank or its counsel.

parties—their rights, interest or obligations were not changed. Thus, the correction of the dates was not a material alteration, and was of no consequence. *Dees v. Escambia Chemical Corp.,* 312 F.Supp. 728, 730 (S.D. Ala. 1970). But the Plaintiffs contend otherwise: they argue that correcting the dates without the Debtor's authorization invalidated the notary acknowledgment and along with it the 2006 Mortgage. That argument is worthy of further discussion.

Conveyances of Alabama real property, including mortgages, are not self-proving unless they are acknowledged as required by the Code of Alabama. *United States Fin. Co. v. Jones*, 259 So. 2d 264 (Ala. 1972) (deed with defective acknowledgment "was not self-proving, and should not have been admitted in evidence, without proof of execution . . . ."). But proof of the Debtor's execution of the 2006 Mortgage was not an issue; she admitted she signed the 2006 Mortgage and that it was "notarized" by Renee Owen. (Joint Stipulation ¶ 14). For an individual grantor who can write and sign her name, "[c]onveyances . . . of [Alabama] lands must be written or printed . . . and must be signed at their foot by the contracting party. . . [and] the execution of such conveyance must be attested by one witness . . . ." Ala. Code § 35-4-20 (1975).[10] If Owen's effort to "notarize" the 2006 Mortgage failed because of the incorrect date, or was later invalidated when the date was changed, neither erased the fact that she witnessed the Debtor's signature. Thus, if the notary acknowledgment was invalid from the outset, or was later rendered invalid, the 2006 Mortgage still satisfied the minimum requirements of § 35-4-20: It was signed by the contracting party, i.e. Hastings, whose execution was attested by one witness, i.e. Renee Owen. *JLJ, Inc. V. Rush Bldg. Co. (In re JLJ, Inc.)*, 115 B.R. 324, 330 (Bankr. N.D. Ala. 1990) (Watson, J.) ("the part of the

---

[10]An acknowledgment by the grantor before a notary satisfies the requirement under § 35-4-20 that the conveyance be witnessed. Ala. Code § 35-4-23 (1975). *See also, Frazier v. Malone*, 387 So.2d 145, 149 (Ala. 1980).

11

assignment which purports to convey this interest in real property, to be effective, would have to meet the requirements for a deed-such as the requirement for a witness, as provided by Ala. Code § 35-4-20 (1975) . . . ."). Moreover, the Alabama Code does not require a conveyance to be dated. Ala. Code § 35-4-20. Hence, correcting the date of the Debtor's signature changed nothing of significance—no party's rights, interst or obligations were changed. *Dees*, 312 F. Supp. at 730. Unfortunately, the consequences of attaching Exhibit "A" to the 2006 Mortgage and then recording the mortgage the second time, cannot be disposed of so simply.

It is plausible that Exhibit "A" was part of the 2006 Mortgage when it was executed by Hastings, and between execution and the first recording the exhibit was inadvertently omitted. If this is what occurred, attaching a duplicate Exhibit "A" for the second recording would not have been an alteration—it merely restored the 2006 Mortgage to its original text as existed when it was signed by Hastings.[11] On the other hand, it is also plausible that Exhibit "A" was missing when the 2006 Mortgage was executed, in which case the addition of the exhibit for the second recording was an alteration, but an alteration that reflected the parties' intent insofar as the description of the Alabama Avenue property was concerned, except with respect to the 7th Street property.[12]

Without resorting to conjecture, there is no evidence allowing the Court to comfortably reach

---

[11] Had Exhibit "A" been attached for the first recording, the 2006 Mortgage would still be subject to reformation by striking the description of the 7th Street property. (See discussion, *infra*, regarding Objection to Bank's Claim).

[12] Regardless of when Exhibit "A" was first made a part of the 2006 Mortgage, after considering all the credible evidence and circumstances regarding Ware's preparation of the 2006 Mortgage, the Court firmly believes Exhibit "A" was prepared by Ware before the closing, thereby leaving an unanswered question: Was Exhibit "A" included as part of the 2006 Mortgage at closing, but omitted during transmittal for the initial recording, or was it absent at closing and first included as part of the 2006 Mortgage immediately before the second recording?

12

Case 09-40067-JJR    Doc 44    Filed 09/30/10    Entered 09/30/10 14:46:51    Desc Main
Document      Page 12 of 19

a conclusion regarding whether Exhibit "A" was, or was not, part of the 2006 Mortgage when it was signed by Hastings at closing. We do know that Exhibit "A" did not find its way to the probate court for recording the first time around, although presumably it had been prepared by attorney Ware when he prepared the 2006 Mortgage, and it was at least available at the closing for inclusion with the 2006 Mortgage. The ultimate consequences of the two equally plausible scenarios just described do not differ as much as one might initially presume. First, the Court will explore how the 2006 Mortgage should be treated based on the assumption that Exhibit "A" was not part of the 2006 Mortgage at closing when it was signed by Hastings.

If Exhibit "A" was not part of the 2006 Mortgage at closing, then its subsequent addition to the mortgage must be considered an alteration; and whether that alteration was material determines the rights of the parties under the altered instrument. As alluded to above, an alteration is considered material if it causes the "'instrument [to] speak a language different in legal effect . . . which carries with it some change in the rights, interests, or obligations of the parties[.]'" *Dees*, 312 F. Supp. at 729 - 30 (quoting *Benton v. Clemmons*, 47 So. 582 (Ala. 1908). A material alteration to a mortgage, made without the mortgagor's authority, vitiates the mortgage—renders it invalid. *Stone v. Stone*, 19 So.2d 390 (Ala. 1944). Without question, if Exhibit "A" was absent at closing, its subsequent addition changed the rights, interest and obligations of Hastings and the Bank, and the alteration would have been material. Nonetheless, what is equally important is whether the alteration, albeit material, was fraudulent.

In *Layfield v. Lewis*, 109 So. 2d 838 (Ala. 1958) the mortgagee had altered a mortgage after it had been executed to reflect that the debt secured thereby would accrue interest; an alteration that changed the rights and obligations of the parties, and thus was a material alteration. A critical issue

13

Case 09-40067-JJR    Doc 44    Filed 09/30/10    Entered 09/30/10 14:46:51    Desc Main
Document      Page 13 of 19

was whether the alteration was fraudulent, because according to the Alabama Supreme Court, "a fraudulent and material alteration of a mortgage by the mortgagee will destroy the lien thereby created upon the property described therein." *Id*. at 840. However, the court recognized that in an earlier decision it had held that when "no fraudulent intent appeared . . . [although] such alteration vitiated [the note and mortgage] . . . the court allowed recovery on the original indebtedness and granted an equitable lien to enforce the debt." *Id.* at 84l (citing *Johnson v. Reed,* 165 So. 759 (Ala. 1936). Thus finding no fraudulent intent, the *Layfield* court held that the lower court's "decree should be so modified to grant [the mortgagee] an equitable lien on the property to enforce collection of the balance of the debt . . . ." 109 So. 2d at 841.

As explained earlier, the Court finds no fraudulent intent or conduct on the part of the Bank or its counsel. Indeed, except for the addition of the 7th Street property description, which was an innocent mistake, the alterations to the 2006 Mortgage were corrections that accurately reflected the intent of the parties. Nonetheless, for this analysis the Court has assumed the worst—that Exhibit "A" was not part of the 2006 Mortgage when it was executed—thus the subsequent addition of Exhibit "A" was a material alteration of the 2006 Mortgage as it changed the rights, interest and obligations of the parties. Following well settled Alabama law, as set out in *Layfield v. Lewis, supra*, such an alteration would have vitiated the 2006 Mortgage. However, because the alteration was not tainted with fraud, the Bank is entitled to retain an equitable lien on the Alabama Avenue property "enforceable by sale thereof made by the register as in cases of foreclosure sales in equity." *Id*. at 841.

Now assume Exhibit "A" was part of the 2006 Mortgage when it was executed by Hastings at the loan closing, but was misplaced before the first recording. If that is what happened, then the

replacement of Exhibit "A" with a duplicate was not an alteration; it changed nothing from what actually occurred at closing. Exhibit "A" evidenced the parties' intent with regard to encumbering the Alabama Avenue property, and evidenced their mutual mistake with regard to the 7th Street property. Under this assumed scenario, the mutual mistake occurred at closing when the 2006 Mortgage was executed with the inclusion of Exhibit "A," not when the misplaced Exhibit "A" was replaced by a duplicate to accommodate the second recording. What is called for under this second scenario is not vitiation but reformation to correct the parties' mutual mistake..

>Ala. Code § 35-4-153 (1975), in pertinent part, states that:

>When, through . . . mutual mistake of the parties, . . . [a] mortgage . . . does not truly express the intention of the parties, it may be revised by a court on the application of the party aggrieved so as to express that intention, insofar as this can be done without prejudice to the rights acquired by third persons in good faith and for value.

A simple revision of the 2006 Mortgage—expunge 7th Street from Exhibit "A"—will cause it to express the intention of Hastings and the Bank. *Taylor v. Kohler*, 507 So. 2d 426 (Ala. 1987) (affirming reformation of deed to include restrictive covenant omitted from prior conveyance); *Fidelity Service Ins. Co. v. A.B. Legg & Sons Burial Ins. Co.*, 145 So.2d 811 (Ala. 1962) (affirming lower court's finding of mutual mistake and reformation of deed by striking land parties did not intend to convey).

As further discussed, *infra*, the Court concludes that the 2006 Mortgage should be reformed by striking therefrom the 7th Street property, but otherwise the 2006 Mortgage should remain intact and remain fully enforceable in accordance with its terms.[13]

---

[13] Of course, unless and until the Court orders otherwise, the exercise by the Bank of its rights and remedies under the 2006 Mortgage, as reformed, will remain subject to the automatic stay imposed by 11 U.S.C. § 326(a).

15

## Section 544(a) Avoidance

The Trustee alleges she is entitled to avoid the 2006 Mortgage under Section 544(a)(3) of the Bankruptcy Code. In pertinent part, and to the extent it might apply to these facts, that Section provides that:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
> . . .
>> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). Accordingly, if at the commencement of the Debtor's bankruptcy case a hypothetical bona fide purchaser could have purchased the Alabama Avenue property—the Bank having conceded any interest in the 7th Street property—without notice of the Bank's interest, then the Trustee is entitled to avoid that interest. *Chase Home Finance, LLC v. Calloway, (In re Calloway)*, 429 B.R. 802 (Bankr. N.D. Ala. 2010). If the Trustee, standing in the shoes of a hypothetical bona fide purchaser, had searched the records maintained by the county probate office she would have discovered the 2006 Mortgage indexed under the Debtor's name as grantor-mortgagor; in fact she would have discovered where it had been recorded twice: the first time without, and the second with, Exhibit "A."[14] Both recording dates occurred before the date the

---

[14]The closing of the consolidation loan occurred on July 28, 200. According to the official recording stamps on the 2006 Mortgage, it was first recorded on August 16, 2006, sans Exhibit "A," and re-recorded on January 12, 2007 with Exhibit "A." The Debtor filed her chapter 13 case on June 1, 2009.

16

Debtor filed her bankruptcy case; thus a purchaser would have been on notice of the second recording and the 2006 Mortgage with Exhibit "A" which purported to encumber the Alabama Avenue property. No doubt the Trustee would argue that under the first scenario discussed above with regard to how Exhibit "A" should be treated, the 2006 Mortgage would not be binding on a purchaser because it had been vitiated—rendered invalid—as a result of being materially altered. Nonetheless, even assuming the 2006 Mortgage was invalid, its re-recorded version would suffice to put a purchaser on constructive notice that the Bank claimed an interest in the Alabama Avenue property, and such notice would defeat a purchaser's claim to bona fide status.

In *United States v. Smith (In re Hagendorfer)*, 803 F.2d 647 (11th Cir. 1986) a bankruptcy trustee sought to avoid a defective mortgage made in favor of the Small Business Administration ("SBA"). The trustee claimed the mortgage was subject to avoidance under Section 544 of the Bankruptcy Code. The Eleventh Circuit summarized the issue as whether or not "the recording of a mortgage with a misdescription of the security . . . constitute[d] either actual or construction notice of the mortgage to an unsecured creditor of the debtor." *Id.* at 648. In ruling in favor of the SBA, the court stated:

> Section 544 of the Bankruptcy Code, the "strong arm" clause, does not set aside the Trustee's duty, as a hypothetical judicial lien creditor, to examine the record of title. Since the Trustee has the duty in Alabama to examine the record, he may be bound by erroneous, defective or incomplete matters of record, the discovery of which would lead to further inquiry.
> . . .
>
> In conclusion, since constructive notice clearly existed to hypothetical judicial lien holders and potential bona fide purchasers in this case concerning the error in the SBA's mortgage, the law in Alabama will permit a reformation of the mortgage. Under the circumstances of this case, such a reformation would not prejudice these hypothetical third party's rights. Ala. Code, § 35-4-135 (1975), *supra.*

*Id.* at 649-50. *See also, Alabama State Land Co. v. Thompson,* 16 So. 440, 442 (Ala. 1894).

Accordingly, the Trustee is not entitled to avoid the Bank's interest in the Alabama Avenue property, whether such interest is considered an equitable lien by virtue of vitiation of the 2006 Mortgage or legal title conveyed as security pursuant to the terms of the 2006 Mortgage.

### *Objection to Bank's Claim*

Finally, the Plaintiffs objected to the Bank's claim filed in the Debtor's bankruptcy case. Inasmuch as there is no dispute regarding the parties' intent that the 7th Street property should not have been encumbered by the 2006 Mortgage, the Plaintiffs' objections to the Bank's claim are due to be sustained to the extent such claim purports to be secured by an interest in the 7th Street property.[15] However, as explained above, the Bank's claim is secured by either an equitable lien against the Alabama Avenue property, or by the legal title to that same property under the terms of the 2006 Mortgage;[16] one or the other depending on which scenario regarding Exhibit "A" is adopted. The Court believes both scenarios are plausible and it is difficult to place one ahead of the other. On the one hand, if the Bank's interest in the Alabama Avenue property is relegated to an equitable lien, that property remains encumbered, and if the underlying debt is not paid the lien may be foreclosed in equity. On the other hand, if the Bank's interest is to be based on the 2006

---

[15] Although not specifically requested in their amended complaints, the 2006 Mortgage should be reformed to reflect the intention of the parties. Such reformation requires that the description of the 7th Street property be stricken from Exhibit "A." Ala. Code § 35-4-153. And to further reflect the parties' intentions, the Bank should release the 7th Street property from the lien of the mortgage made by Hastings to secure the 2005 loan.

[16] Just to be clear, Alabama is a so called "title state" with respect to real property mortgages. Virtually all Alabama mortgages convey to the mortgagee the legal title to the mortgaged property, and the mortgagor retains the equitable right to redeem that title by satisfying the secured obligation.

18

Mortgage as written (other than the omission of the 7th Street property), the Debtor's title to the Alabama Avenue property will likewise remain subject to foreclosure if she does not pay the secured debt—the difference being that the foreclosure would be under the power of sale expressed in the 2006 Mortgage and not necessarily in an equity action.[17] Whether the 2006 Mortgage remains intact with regard to the Alabama Avenue property or is relegated to an equitable lien does not significantly change the rights or interest of the parties. Accordingly, the Court concludes that the 2006 Mortgage should remain enforceable in accordance with its terms, but must be reformed, nonetheless, to strike the description of the 7th Street property therefrom.

Pursuant to Bankruptcy Rule 9021 a separate Order shall be entered consistent with this Opinion.

Dated: September 30, 2010

/s/ James J. Robinson
JAMES J. ROBINSON
United States Bankruptcy Judge

---

[17] Although more expensive and time-consuming, the Bank would also have the option of proceeding in equity to foreclose the 2006 Mortgage even though its power of sale remained enforceable.